T. W. Smith, Plaintiff-Appellant, v. Joliet Airmotive, Inc., et al., Defendants (Robert W. Chandler, Intervenor-Appellee).

Gen. No. 11,588.

Second District, Second Division.

April 24, 1962.

John A. Murchison, of Joliet, for appellant.

Bradley, Pipin, Vetter & Eaton, of Chicago, (Marshall A. Pipin and John M. Quigley, of counsel), for intervenor-appellee.

WRIGHT, J.

An action in attachment was commenced on December 16, 1960, in the Circuit Court of Will County by plaintiff, T. W. Smith, attaching a certain Beechcraft C50 airplane, hereinafter referred to as the aircraft, as the property of the defendants, Joliet Airmotive, Inc., and John Kupka, for an indebtedness alleged to be due plaintiff from said two defendants. The sheriff of Will County seized the aircraft pursuant to the writ of attachment. Robert H. Chandler, thereupon, filed an intervening petition claiming said aircraft as his property and praying that the attachment be discharged. The case was tried on July 10, 1961, before the court without a jury and judgment was entered declaring the intervenor, Robert H. Chandler, to be the legal owner and entitled to immediate possession of said aircraft, and further ordering the writ of attachment quashed and the subject aircraft returned to the intervenor, Robert H. Chandler. From this judgment order, plaintiff appeals.

The plaintiff, T. W. Smith, a dealer in aircraft sales, acquired title to the aircraft in dispute from the Sterling Equipment Company of Louisville, Kentucky, on April 27, 1959, and received a bill of sale therefor from the vendor. He did not record the bill of sale with the Federal Aviation Agency. Subsequently on August 3, 1959, the plaintiff sold the aircraft through John Kupka, President of the Joliet Airmotive, Inc., to a purchaser not known by the plaintiff. The amount of the sale price was $34,000 to be paid by a certified check. When plaintiff delivered the aircraft to Joliet Airmotive, Inc., Mr. Kupka advised plaintiff that it was too late in the day for him to obtain the certified check for $34,000. It was then agreed that Mr. Kupka would give an uncertified check to the plaintiff and that the plaintiff would hold his bill of sale, which he received from the Sterling Equipment Company at the time he purchased

4

the aircraft, until the certified check was honored at the bank. At that time plaintiff delivered the aircraft to John Kupka and delivered a bill of sale to him signed by the plaintiff in blank. Whereupon, Mr. Kupka gave to plaintiff an uncertified check for the purchase price of the aircraft, which check was subsequently presented for payment and dishonored. The name of Wiley H. Mullen, Jr., was subsequently filled in as the purchaser in the blank bill of sale which had been executed and delivered by the plaintiff. On March 3, 1960, Wiley H. Mullen, Jr., sold the aircraft to Joliet Airmotive, Inc., and delivered to it a bill of sale for the aircraft. On March 7, 1960, Joliet Airmotive, Inc., sold said aircraft to intervenor, Robert H. Chandler, and delivered its bill of sale to him. The plaintiff was subsequently paid all but $3,-500 for the aircraft.

It is the theory of the plaintiff that his conveyance of the aircraft involved was upon an agreement of conditional sale, which upon breach of condition, entitled him to recover the aircraft. Plaintiff argues that his withholding of the bill of sale, which he received from the Sterling Equipment Company from recordation and refusing to deliver it to Kupka until the uncertified check given him by Kupka was honored by the bank, made the sale conditional on the check being honored and since the check was dishonored there was a breach of the condition entitling him to recover the aircraft. Plaintiff further urges that he is entitled to seize the aircraft and cause the same to be sold to satisfy the indebtedness due him.

It is the theory of the intervenor that he was the owner of the aircraft and not Joliet Airmotive, Inc., and John Kupka at the time of the attachment. The intervenor further urges that he is not indebted to the plaintiff and that he is, therefore, entitled to possession of the aircraft and to the discharge of the aircraft from the attachment.

5

The plaintiff and the intervenor, prior to trial, stipulated certain facts to be accepted by the court as true and correct without evidentiary proof thereof. The pertinent facts stipulated were as follows:

"3. The Intervenor, Robert H. Chandler, is not indebted to the plaintiff, T. W. Smith.

"4. Prior to the commencement of these proceedings and prior to the issuance of the writ of attachment on December 16, 1960, and prior to the possession of the aircraft by the sheriff of Will County under said writ of attachment, the following sales of said aircraft by bills of sale have been made:

(a) August 3, 1959—T. W. Smith, plaintiff herein, conveyed his interest in the subject aircraft by bill of sale to one Wiley H. Mullen, Jr. The bill of sale was executed by Smith and delivered to Mullen, and Mullen took possession of the said aircraft.

(b) March 3, 1960—Wiley H. Mullen, Jr. conveyed his interest in the aircraft by bill of sale to Joliet Airmotive, Inc., defendant herein, who took possession thereof.

(c) March 7, 1960—Joliet Airmotive, Inc. conveyed the aircraft to the Intervenor by bill of sale. The Intervenor paid or caused to be paid to Joliet Airmotive, Inc., the full consideration, and Intervenor took possession of the aircraft."

The series of transfers of the aircraft set forth in the foregoing stipulation clearly discloses that the intervenor, Robert H. Chandler, acquired title to the aircraft by a bill of sale on March 7, 1960, which was some nine months prior to December 16, 1960, the date on which the plaintiff instituted the attachment proceedings to attach the aircraft as the property of John Kupka and Joliet Airmotive, Inc. The bill of sale

6

from plaintiff to Wiley H. Mullen, Jr., was in the form of an unconditional bill of sale reciting that the plaintiff "does this 3rd day of August, 1959, hereby sell, grant, transfer, and deliver all of his right, title and interest in and to such aircraft unto: Dr. Wiley H. Mullen, Jr., M. D. . . . and to his executors, administrators, and assigns, to have and to hold singularly the said aircraft forever, and certifies that same is not subject to any mortgage or other encumbrance . . ." All subsequent transfers and bills of sale to the aircraft, including the bill of sale to the intervenor, were in the same unconditional form. We have reviewed all three of the bills of sale in the record before us, including the bill of sale signed by the plaintiff to Wiley H. Mullen, Jr., and find that none of them could be more unconditional and absolute.

At the time plaintiff reached an oral agreement with Mr. Kupka, an officer in the Joliet Airmotive, Inc., as to the purchase price to be paid for the aircraft in the amount of $34,000, the plaintiff requested that he be paid by a certified check. When plaintiff delivered the aircraft to Mr. Kupka, he was advised that it was too late in the day to have a check certified. Rather than wait until the bank opened the next morning, plaintiff accepted an uncertified check from Mr. Kupka and delivered to him a bill of sale for the aircraft signed by plaintiff in blank leaving it to Mr. Kupka to insert the name of the purchaser, and at that time plaintiff delivered possession of the aircraft to Mr. Kupka. Thus, in substance, plaintiff delivered an unconditional bill of sale and possession of the aircraft to Kupka relying on the uncertified check being honored by the bank. When the check was presented for payment, it was dishonored. There was nothing conditional about the sale of the aircraft. The purchase price was agreed on. The bill of sale executed in blank and given to Kupka and the aircraft was delivered and the plaintiff accepted the uncertified check.

7

Plaintiff testified that he was experienced in selling airplanes and registering titles thereto and must necessarily have known of the difference between a bill of sale and conditional sales contract, both of which are used in the selling of airplanes. The title to the aircraft passed to the intervenor prior to the issuance of the writ of attachment and there was nothing left in the hands of Joliet Airmotive, Inc., or John Kupka which plaintiff could seize.

The rule is, that an attaching creditor acquires by reason of his attachment only such rights to the property or assets attached as his debtor had at the time the writ was issued. Mattoon Grocery Co. v. Stuckemeyer & Olson, 326 Ill 602, 158 NE 422.

The withholding by plaintiff of the recordation of the bill of sale he received from the Sterling Equipment Company at the time he purchased the aircraft was not sufficient to retain title in the plaintiff under the provisions of the Federal Transportation Act, 49 USC 1403. We have examined the sections of the Federal Transportation Act cited by the parties hereto, and find as against the person making the conveyance, the conveyance need not be recorded to be valid. As against the plaintiff, his bill of sale to Wiley H. Mullen, Jr., was valid even though it was not filed for recordation as was the bill of sale from the Sterling Equipment Company to the plaintiff. The recording requirements of the Federal Transportation Act as to civil aircraft are intended for the protection of innocent persons who have dealt on the faith of the recorded title and not for the protection of the person making the conveyance such as the plaintiff herein. There is nothing in the record showing that the intervenor, Robert H. Chandler, was in any way indebted to the plaintiff.

We are of the opinion that the intervenor, Robert H. Chandler, properly intervened in the attachment action and produced ample evidence to establish

8

his title and right to possession of the aircraft. The judgment order of the Circuit Court is affirmed.

Judgment affirmed.

SPIVEY, P. J. and CROW, J., concur.